**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WINNIBER DE LOS SANTOS MEDINA,**<br>**Petitioner,**<br>**v.**<br>**J.L. JAMISON, *et al.*,**<br>**Respondents.** | **CIVIL ACTION NO. 26-6800** |

**MEMORANDUM OPINION**

**Rufe, J.** **September 16, 2026**

Petitioner Winniber De Los Santos Medina brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security ("DHS") as unlawful. Petitioner argues that his detention violates the substantive and procedural portions of the Fifth Amendment Due Process Clause and that Respondents' actions violate the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). The government opposes the Petition and argues that Petitioner failed to exhaust administrative remedies, that Petitioner's detention does not violate substantive or procedural due process, and that Petitioner's APA claims fail on jurisdictional and substantive grounds. For the reasons stated below, the Court will grant the Petition and order Petitioner's immediate release.

## I. BACKGROUND

Petitioner is a national and citizen of the Dominican Republic who entered the United States without inspection at an unknown date on or around July 2, 2022.[1] Shortly after entering the country, Petitioner was encountered and taken into custody by DHS officers but was released

[1] Pet. ¶ 19 [Doc. No. 1]; Opp'n at 3 [Doc. No. 3]; Opp'n, Ex. B, I-213 [Doc. No. 3-2].

on humanitarian parole due to COVID-19 risk factors.[2] Petitioner's release was contingent upon his participation in DHS's Alternatives to Detention program, which initially included electronic monitoring.[3] Petitioner has complied with the conditions of his release.[4]

Following his release from custody, Petitioner applied affirmatively for asylum.[5] In 2024, he married a United States Citizen.[6] Petitioner's wife filed an application for Petitioner to receive lawful permanent resident status based on his marriage to a United States citizen, which was pending at the time of Petitioner's detention but was administratively closed as a result of DHS' decision to detain Petitioner, as was Petitioner's green card application.[7]

On September 8, 2026, Petitioner was taken into custody by DHS officials during a scheduled check-in appointment in Philadelphia and placed in removal proceedings.[8] Petitioner is currently detained at the Federal Detention Center in Philadelphia, Pennsylvania.[9] Petitioner has no criminal record or outstanding warrants, and there is no evidence showing that he is flight risk or a risk to the community, but rather that he reported faithfully to all notices to appear for check-ins.[10] Petitioner requested review of DHS's custody determination by an immigration judge.[11]

---

[2] Opp'n, Ex. B, I-213 [Doc. No. 3-2].

[3] Pet. ¶ 1 [Doc. No. 1].

[4] *Id.* ¶ 22.

[5] *Id.*

[6] *Id.* ¶ 21.

[7] *Id.* ¶ 22.

[8] *Id.* ¶ 23; Opp'n at 3 [Doc. No. 3].

[9] Pet. ¶ 24 [Doc. No. 1].

[10] *See* Opp'n, Ex. B, I-213 [Doc. No. 3-2]; Opp'n at 3 [Doc. No. 3].

[11] Opp'n, Ex. A, I-286 [Doc. No. 3-1].

On September 9, 2026, Petitioner filed the instant Petition for a Writ of Habeas Corpus.[12] This Court entered an order directing the government to show cause as to why the Petition should not be granted, setting a hearing for September 14, 2026, and prohibiting Petitioner's transfer from this Court's jurisdiction.[13] At the request of the government, the hearing was rescheduled to, and held on, September 15, 2026.[14] Petitioner requested but has not yet received review of his custody determination by an immigration judge. Having received the government's response and having heard argument by the parties, the Court now evaluates the Petition.

## II. Legal Standard

Federal district courts are authorized to grant a § 2241 petition where Petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[15] The petitioner has the burden of showing that the detention violates the Constitution of the United States or federal law.[16]

## III. Discussion

Petitioner argues that his detention violates the Due Process Clause because it occurred without a finding of material change in circumstances indicating that Petitioner is a danger to the community or a flight risk and without an opportunity for a pre-detention hearing before a neutral decisionmaker. The government contends that Petitioner's *opportunity* for a post-detention bond hearing in front of an immigration judge satisfies due process and that Petitioner must exhaust administrative remedies by pursuing such a bond hearing and, if necessary, an

[12] Pet. [Doc. No. 1].

[13] 9/9/26 Order [Doc. No. 2].

[14] 9/14/26 Order [Doc. No. 5].

[15] 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citations and quotation marks omitted)).

[16] 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

appeal to the Board of Immigration Appeals. It also asserts that Petitioner is lawfully detained under § 1226(a).

As a preliminary matter, this Court finds that it has jurisdiction to review Petitioner's claims. The government claims that, under 8 U.S.C. § 1226(e), the Attorney General's decision to detain or release an individual under § 1226 is discretionary and not subject to judicial review.[17] But Petitioner's claim is that the procedures employed by DHS prior to detaining him are deficient under the Due Process Clause, not that DHS should not have detained him as a discretionary matter. Section 1226(e) does not bar review of a constitutional challenge to the procedures used before detaining a noncitizen under § 1226, and does not strip this Court of jurisdiction to hear Petitioner's claim.[18] The Court finds that no other jurisdiction-stripping provisions of the INA bar review of the Petition.[19]

---

[17] *See* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.").

[18] *Demore*, 538 U.S. at 516-17 (holding that § 1226(e) does not bar review of a constitutional challenge to "the statutory framework that permits . . . detention"); *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (plurality opinion) (holding that a challenge to "the extent of the Government's detention authority" falls outside the scope of § 1226(e)).

[19] 8 U.S.C. § 1252(g), which bars review of "any cause or claim . . . arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," does not preclude judicial review of the instant Petition. Petitioner challenges his detention without a pre-deprivation individualized custody determination or opportunity to be heard, rather than the commencement of removal proceedings.

8 U.S.C. § 1252(a)(2)(B)(ii) does not apply to this case. Section 1252(a)(2)(B)(ii) bars review of only a "decision or action of the Attorney General or the Secretary of Homeland Security" that is committed to those officials' discretion. Authority under the detention statute is not a matter of discretion, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), so § 1252(a)(2)(B)(ii) does not preclude judicial consideration of the Petition.

Finally, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Secretary of United States Department of Homeland Security*, 950 F.3d 177, 186 (3d Cir. 2020). Petitioner's argument that he is unlawfully detained does not challenge his removal.

**A. Exhaustion**

Generally, petitioners seeking habeas relief under § 2241 are required to exhaust administrative remedies before the habeas petition can be heard.[20] However, as the statute contains "no [explicit] exhaustion requirement,"[21] exhaustion is a matter of "sound judicial discretion."[22] A § 2241 habeas petitioner need not exhaust administrative remedies if exhaustion would be futile or if the issue presented involves only statutory construction.[23]

The government asserts that, rather than pursue habeas relief in this Court, Petitioner must first exhaust his administrative remedies; namely, a bond hearing in front of an immigration judge and potential appeal to the Board of Immigration Appeals.[24] But these are administrative remedies available to Petitioner only *after* his allegedly unconstitutional deprivation of liberty. Since Petitioner challenges his initial custody determination, exhaustion of these post-deprivation administrative remedies would be futile. As this Court has held, "[a] later bond hearing does not necessarily cure the alleged constitutional deprivation that preceded it."[25]

---

[20] *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).

[21] *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).

[22] *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs.").

[23] *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003) ("[W]here exhaustion is not clearly mandated by statute, a futility exception exists.); *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (A petitioner does not need to "exhaust administrative remedies where the issue presented involves only statutory construction"); *see also Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) ("Exhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.").

[24] Opp'n at 5-6 [Doc. No. 3]; *see also* 8 C.F.R. § 236.1(d) (implementing 8 U.S.C. § 1226 and allowing for post-detention appeals from custody decisions). The government cites several cases from this Court applying the exhaustion requirement to habeas petitions brought by individuals detained under § 1226(a). *E.g.*, *Ubaid v. Jamison*, No. 26-cv-2681, 2026 WL 1346670, at *3 (E.D. Pa. May 14, 2026); *Torres-Duran v. Blanche*, No. 26-cv-3586, 2026 WL 1878605 (E.D. Pa. June 30, 2026); *Carrillo Gomez v. Jamison*, No. 26-cv-3879, 2026 WL 1959116, at *2-3 (E.D. Pa. July 6, 2026).

[25] *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (explaining that "any post-deprivation review by an immigration judge" is inadequate where ICE failed to conduct an individualized assessment before detention); *Gopie v. Lyons*, No. 25-05229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) ("[A] bond hearing before an immigration judge

Furthermore, the record calls into question whether administrative remedies are truly available to Petitioner. The government represents only that "Petitioner requested a bond hearing on September 8, 2026, and is awaiting scheduling of that hearing by the immigration court."[26] However, Respondents are detaining Petitioner at a facility that does not have the capability to facilitate remote hearings and claim that Petitioner cannot receive his requested bond hearing without transfer to another facility outside of this Court's jurisdiction.[27] Respondents do not provide an explanation why they are unable to hold an in-person bond hearing. It appears that the government has created detention arrangements that inhibit Petitioner's access to the bond hearing that the government itself claims he must exhaust. "A remedy that exists only if ICE elects to make it accessible is not an available remedy Petitioner must exhaust."[28] Accordingly, the Court, exercising its discretion, finds that Petitioner is not required to exhaust administrative remedies before the Petition can be heard.

### B. Procedural Due Process Claim

Petitioner challenges his detention absent a particularized finding of changed circumstances from his earlier release and without a pre-deprivation hearing as a violation of the

is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance.")); *see also Dzehtisarou v. Mullin*, No. 26-cv-5060, 2026 WL 2211392, at *2 (holding that petitioner detained under § 1226(a) need not exhaust post-deprivation administrative remedies to challenge constitutionality of initial custody determination).

[26] Opp'n at 6 [Doc. No. 3].

[27] *See* Opp'n, Ex. B, I-213 [Doc. No. 3-2] (stating that "ICE intends to transfer [Petitioner] to Moshannon Valley [Processing Center in Clearfield County, Pennsylvania] within 5-7 business days").

[28] *Dos Reis*, 2026 WL 1746649, at *3; *cf. Ross v. Blake*, 578 U.S. 632, 642 (2016) (finding that, in the context of the PLRA, a prisoner "need not exhaust unavailable" remedies); *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025) (concluding that, in the context of the PLRA, an "administrative remedy is considered unavailable 'if a prisoner, through no fault of his own, was prevented from availing himself of it.'").

Due Process Clause of the Fifth Amendment. Because Petitioner is detained pursuant to § 1226(a), the Court must "determine whether the detention violates due process."[29]

There is no question that the Due Process Clause applies to Petitioner's detention. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."[30] Furthermore, "[f]reedom from imprisonment—from government custody, detention, or other forms of government restraint—lies at the heart of the liberty that [the Due Process] Clause protects."[31] When it is clear that due process applies, "the question remains what process is due."[32] The question before the Court is whether the detention of Petitioner without an individualized custody determination or an opportunity to be heard prior to the detention violates due process.

The government asserts that the post-deprivation appeal process afforded to those detained under § 1226(a)—a bond hearing in front of an immigration judge and potential appeal to the BIA—is sufficient to satisfy due process. But before the government can exercise its discretion to detain a noncitizen under § 1226 in the first place, this Court has previously held DHS must make an individualized custody determination.[33] In particular, this initial custody determination "requires an individualized determination as to whether the noncitizen is a danger to property or persons and is likely to appear for any future proceeding."[34]

---

[29] *Singh v. Bondi*, 5:26-CV-0125-JKP, 2026 WL 690013, at *4 (W.D. Tex. Mar. 6, 2026) (quoting *Lopez Benitez*, 795 F. Supp. at 491-96) (internal quotation marks omitted).

[30] *Zadvydas*, 533 U.S. at 693.

[31] *Id.* at 690.

[32] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

[33] *Dos Reis*, 2026 WL 1746649, at *4; *Dzehtisarou*, 2026 WL 2211392, at *4; *see also Singh*, 2026 WL 690013, at *6; *Lopez Benitez*, 795 F. Supp. 3d at 493.

[34] *Dos Reis*, 2026 WL 1746649, at *4 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 493 (quoting 8 C.F.R. § 1236.1(c)(8)) (internal quotation marks omitted); *Dzehtisarou*, 2026 WL 2211392, at *4.

The record does not reflect an individualized assessment prior to Petitioner's detention. Not once in the government's response to the Petition does it provide information for Petitioner's detention without a hearing.[35] The Notice of Custody Determination given to Petitioner states only: "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act . . . I have determined that, pending a final administrative determination in your case, you will be [d]etained by the Department of Homeland Security."[36] The Notice to Appear in removal proceedings gives the justification that Petitioner is subject to removal pursuant to § 212(a) of the INA, but this status on its own does not justify a custody determination. "Relying solely on Petitioner's immigration status amounts to a per se determination that comports not with 1226(a), but with the government's desired policy of detention."[37]

Indeed, nothing in the record supports the notion that Petitioner is a danger to the community or a flight risk. The government never claims so in its filings, and the Record of Deportable/Inadmissible Alien notes only that Petitioner has no criminal history.[38] Furthermore, neither the government's response to the Petition nor the Record of Deportable/Inadmissible Alien consider, or even acknowledge, that Petitioner both affirmatively applied for asylum while on humanitarian parole and had a pending application for adjustment of status on the basis of his marriage to a United States citizen. In lieu of any pre-detention individualized determination, the government rests its argument on the discretion afforded to the Attorney General under § 1226(a) and the post-detention process offered by the statute.

---

[35] *See* Opp'n [Doc. No. 3].

[36] Opp'n, Ex. A, I-286 [Doc. No. 3-1].

[37] *Dzehtisarou*, 2026 WL 2211392, at *5 (quoting *Dos Reis*, 2026 WL 1746649, at *4) (internal quotations and brackets removed).

[38] Opp'n, Ex. B, I-213 [Doc. No. 3-2].

Determining whether the process offered up by the government is constitutionally sufficient requires analysis of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional substitute procedural requirement would entail.[39]

These factors apply when evaluating the process afforded to noncitizens taken into civil immigration custody.[40] Accordingly, the Court conducts an individualized assessment by balancing these factors to determine whether Petitioner has received procedural due process.

1. Private Interest

Petitioner has a "constitutionally protected interest in avoiding physical restraint."[41] Indeed, Petitioner's "interest in being free from physical detention" is "the most elemental of liberty interests."[42] The Supreme Court has recognized that conditional release, as of a parolee, while not unrestricted liberty, "is valuable and must be seen as within the protection of the" Due Process Clause.[43]

In this case, the government made the affirmative decision not to detain Petitioner when it released him on humanitarian parole in 2022, and it has repeatedly elected not to detain Petitioner until now despite consistent and regular contact with him. Petitioner thus has a substantial liberty interest in his continued freedom from detention.

[39] *Mathews v. Eldrige*, 424 U.S. 319, 334 (1976).

[40] *Buele Morocho v. Warden Phila. FDC*, Nos. 16-1150, 26-1454, 2026 WL 2546223, at *9 (3d Cir. Aug. 28, 2026); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331-32 (3d Cir. 2021).

[41] *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997).

[42] *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

[43] *Morrissey*, 408 U.S. at 482 ("[T]he liberty of a parolee [or person on conditional release], although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others.").

2. Risk of Erroneous Deprivation

The lack of an individualized custody determination or pre-detention hearing available to Petitioner creates a substantial risk of erroneous deprivation of his liberty. Without either, DHS is permitted to detain Petitioner pursuant to a general policy goal without the need to "explain why detention, rather than release on conditions, is necessary for *this* Petitioner."[44] The risk is particularly pronounced where, as here, there is no indication that Petitioner is a danger to the community or a flight risk.[45] Rather, the record demonstrates that Petitioner has complied faithfully with all release conditions imposed by DHS, has sought adjustment of status through multiple channels, and has had no material change in circumstances following his initial release from custody in 2022 besides his marriage to a U.S. citizen. Short-circuiting Petitioner's attempt to become a lawful permanent resident through legal means by imposing custody with no individualized justification creates an alarmingly high risk of erroneous deprivation.

3. Government's Interest

The government has a legitimate interest in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community."[46] However, as noted, the record shows that Petitioner has no criminal record and has a history of compliance with release condition. Nowhere does the government claim that he is a danger to the community or a flight risk. Thus, the government's interest in Petitioner's detention is weak.[47]

---

[44] *Dos Reis*, 2026 WL 1746649, at *5.

[45] *See Buele Morocho*, 2026 WL 2546223, at *9 ("[T]he absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving Petitioners of their liberty interest." (citations omitted)).

[46] *Zadvydas*, 553 U.S. at 690.

[47] *See Buele Morocho*, 2026 WL 2546223, at *10 ([T]he government's legitimate interest in preventing release of dangerous noncitizens and those who might fail to appear at future hearings does not outweigh the other two factors here, particularly when these non-criminal individuals were detained absent evidence that either is dangerous or a flight risk . . . ." (citation omitted)); *Dos Reis*, 2026 WL 1746649, at *5 (holding that the government's legitimate

4. Balancing the Factors

The government's interest in enforcing immigration laws, specifically preventing danger to the community and the risk of Petitioner failing to appear at future hearings, is insignificant in this case and is outweighed by the "significant liberty interest at stake [and] the high risk of erroneous deprivation" of that interest.[48] Thus, the *Mathews* factors, on balance, weigh in favor of finding a due process violation.[49] The further requirement of an individualized pre-deprivation custody determination does not impose an undue burden on the government.[50] Accordingly, Petitioner's due process rights were violated by his detention without a pre-detention individualized custody assessment or bond hearing, and his detention is unlawful.

The Court notes that the Third Circuit's recent decision in *Buele Morocho v. Warden Philadelphia FDC* imposes no barrier to its holding today.[51] In *Buele Morocho*, the Third Circuit held that the mandatory detention of noncitizen Petitioners without a bond hearing under 8 U.S.C. § 1225(b)(2)(A) violated due process.[52] While it is true that the Third Circuit did not specify that bond hearings must be provided prior to detention pursuant § 1225(b)(2)(A), nothing in its reasoning precludes a finding that pre-deprivation process is necessary before detention

---

interests in "ensuring appearance at removal proceedings and protecting the community . . . support detention only when the Government connects them to the individual detainee").

[48] *Singh*, 2026 WL 690013, at *7 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 496).

[49] *See Buele Morocho*, 2026 WL 2546223, at *8-10 (finding due process violations where Petitioners' interest in avoiding physical restraint and the risk of erroneous deprivation from "the absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or a flight risk" outweighed "the Government's legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings" (citations omitted)).

[50] *Dos Reis*, 2026 WL 1746649, at *5; *see also C.W.M. v. Hermosillo*, No. 2:25-CV-02688-DGE, 2026 WL 183587, at *5 (W.D. Wash. Jan. 23, 2026) ("[A]lthough requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient.").

[51] Nos. 26-1150, 26-1454, 2026 WL 2546223 (3d Cir. Aug. 28, 2026).

[52] *Id.* at *8-10.

under § 1226(a). In *Buele Morocho*, the Third Circuit engaged in a *Mathews* factor analysis much like the one this Court undertakes here. It concluded that, because the private interest in freedom from custody and the high risk of erroneous deprivation arising from "the absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks" outweighed the government's interest "in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings," the petitioners' "detention without bond hearings violated their procedural due process rights."[53] This Court concludes the same with regard to § 1226(a).[54]

5. Remedy

As Petitioner's present detention is unconstitutional, the proper remedy is release. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."[55] A post-detention bond hearing is not an adequate substitute for the pre-detention individualized assessment that due process requires before the "initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause."[56]

**C. Substantive Due Process and Administrative Procedure Act Claims**

Petitioner also challenges his detention under the substantive component of the Fifth Amendment Due Process Clause and the Administrative Procedure Act. Because Petitioner is

[53] *Id.* at *9-10 (citations omitted).

[54] Further of note, the government's assertion that the Third Circuit found the post-deprivation process of § 1226(a) "to be constitutionally adequate" in *Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274 (3d Cir. 2018) is misguided. Opp'n at 13 [Doc. No. 3]. In that case, the petitioner, who had been detained under § 1226(a) claimed a right to a second bond hearing because his detention lasted for over a year. *Id.* at 276-77. The Third Circuit was explicit that "[t]he duration of [the petitioner's] detention [was] the sole basis for his due process challenge." *Id.* at 276. The petitioner in *Borbot* never challenged his initial detention as Petitioner does here, so the Third Circuit never ruled on whether it violated due process.

[55] *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

[56] *Cruz-Reyes v. Bondi*, 818 F. Supp. 3d 875, 884 (S.D. Texas 2026).

entitled to habeas relief based on violation of procedural due process, the Court does not reach either claim.

## IV. CONCLUSION

For the reasons stated herein, the Petition for a Writ of Habeas Corpus will be granted, and the Court will order Petitioner's immediate release. An order will be entered.